UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

BILAL ABDUL YASIN,

                               NO. CIV. S-08-2299 FCD/GGH

        Plaintiff,

     v.                          <u>MEMORANDUM AND ORDER</u>

CHAD COULTER, ALBA ESPINOZA,
JOE GALVAN, ROMAN ALVAREZ,
and Does 1 through 20,
inclusive,

        Defendants.

----oo0oo----

    This matter is before the court on defendant Chad Coulter's ("defendant" or "Coulter") motion for summary judgment as to plaintiff Bilal Abdul Yasin's ("plaintiff") first amended complaint ("FAC"), alleging violations of plaintiff's constitutional rights under the Fourth, Fifth and Fourteenth Amendments of the United States Constitution.[1]  The claims arise

---

[1]  The FAC, filed May 27, 2009, also names Alba Espinoza, Joe Galvan and Roman Alvarez as defendants.  To date, plaintiff has not served these defendants, and they are not moving parties on the instant motion.  By this order, the court dismisses Coulter from this action.  The court has not yet issued a scheduling order.  It will defer doing so to permit plaintiff a

1   out of an investigation and arrest of plaintiff for buying stolen

2   cigarettes and selling illegal narcotics.   Plaintiff does not

3   deny in his FAC that he engaged in this conduct but alleges he

4   was impermissibly singled out for investigation because he is

5   Palestinian and a Muslim.

6       Plaintiff opposes Coulter's instant motion, arguing the

7   hearing on the motion should be continued to permit him time to

8   conduct discovery.   Because the court finds that plaintiff has

9   not made the requisite showing under Fed. R. Civ. P. 56(f), the

10  court resolves the motion on the papers and evidence presently

11  before it.[2]

12      For the reasons set forth below, the court GRANTS

13  defendant's motion on the ground that plaintiff's claims are

14  barred by the statute of limitations.   As a result of that

15  finding, the court does not reach defendant's alternative basis

16  for the motion that Coulter is entitled to qualified immunity.

17

18

19

20

21

22

23

24

25

26  final opportunity to serve the remaining defendants as set forth
    below.

27      [2]   Because oral argument will not be of material
    assistance, the court orders this matter submitted on the briefs.

28  E.D. Cal. L.R. 78-230(h).

BACKGROUND[3]

I.   **Factual Background**

    A.   **Investigation of Plaintiff**

    Coulter, a Federal Bureau of Investigation Special Agent, first learned of plaintiff's name in connection with potential drug trafficking in the course of the FBI's investigation of a drug trafficking operation in Northern California. (RUF ¶ 1.) Some of the individuals suspected of being involved in the drug trafficking operation either owned convenience stores or also worked as resellers of merchandise to convenience stores along the I-5 Interstate corridor.  This corridor is known for drug trafficking, including methamphetamine.  Some of the individuals suspected of involvement in the drug trafficking operation also had frequent contacts with plaintiff and his convenience store called "Chinca's Market" located in Chico, California. (RUF ¶ 2.)

    Sometime thereafter, Coulter obtained plaintiff's criminal history showing an arrest for drug possession in 1994. (RUF ¶ 3.)  In March 2004, Coulter received a 1996 report from the California Department of Justice concerning the arrest of a person for transporting 48 cases of pseudoephedrine tablets in a Ryder truck.  The tablets in boxes had labels attached for candy and gum, and it was suspected this was done to conceal the

---

[3]     The court considers the following facts undisputed. While plaintiff claims to "dispute" the majority of the facts below, the only basis for his dispute is his request for discovery pursuant to Rule 56(f).  For the reasons set forth below, the court denies that request, and thus, plaintiff has not presented any admissible evidence to create a triable issue. (See Reply Sep. Stmt. of Undisp. Facts in Supp. of Def.'s MSJ, filed Aug. 24, 2009 [Docket #32-8] [hereinafter "RUF")].)

identity of the contents in an effort to utilize the tablets to manufacture methamphetamine (since pseudoephedrine is a major ingredient of methamphetamine).  The individual arrested indicated that he had been working for his "cousin" who owned Chinca's Market in Chico.  This "cousin" was identified through subsequent investigation as plaintiff.  Plaintiff admitted purchasing some pseudoephedrine boxes every so often, but denied knowing that such tablets were used to make methamphetamine.  (RUF ¶ 4.)

The FBI also received another report indicating that an individual under investigation frequented plaintiff's apartment in approximately 2000, and that this person was "involved in drugs" and was on probation.  (RUF ¶ 5.)  In May 2004, Coulter received information from an inmate in a Butte County jail that plaintiff was involved in bartering alcohol for sexual favors, and that he hired young men to drive trucks running drugs to Los Angeles.  (RUF ¶ 6.)  Coulter also inquired of local law enforcement about criminal activity near Chinca's Market.  He received information about such activity, including drug activity.  (RUF ¶ 7.)

Based on this information, in September 2004 the FBI, with the assistance of a public utility company, installed a telephone pole camera ("pole camera") to observe possible criminal activity at Chinca's Market.  (RUF ¶ 8.)  Plaintiff learned of the pole camera from a former public utility employee and called the FBI shortly after it was installed to inquire about the camera.  (RUF ¶ 9.)

4

1    At some point in 2004, Coulter contacted agents of the
2  California Alcohol Beverage Control Board ("ABC").  He inquired
3  about whether they had any information about plaintiff and his
4  business.  This was part of the FBI's routine contact with ABC
5  concerning potential criminal conduct at liquor
6  stores. (RUF ¶ 10.)  After this contact, the FBI and ABC jointly
7  opened an investigation of plaintiff, with Coulter providing
8  assistance to ABC's investigation. (RUF ¶ 11.)

9    ABC began undercover operations beginning in approximately
10 September 2004.  On at least three occasions in 2004 and 2005, an
11 undercover ABC operative offered to sell plaintiff cigarettes
12 that the operative told plaintiff were stolen.  Plaintiff agreed
13 to purchase the cigarettes.  The undercover operative also had
14 contact with employees of Chinca's Market concerning the purchase
15 of cigarettes that the operative told the employees were stolen.
16 (RUF ¶ 12.)

17    In late January 2005, the undercover ABC operative arranged
18 to sell plaintiff approximately twenty-five cases of cigarettes
19 that the operative told plaintiff were stolen.  The operative
20 also arranged to purchase from plaintiff approximately a half
21 pound of marijuana. (RUF ¶ 13.)  Coulter had no direct contact
22 with plaintiff or anyone else in Chinca's Market during the
23 undercover operations. (RUF ¶ 14.)

24    **B. Arrest and Search of Plaintiff's Home and Business**

25    On February 1, 2005, ABC obtained a warrant from the Butte
26 County Superior Court to search plaintiff's residence and
27 Chinca's Market for evidence of stolen cigarettes and drug
28

trafficking.  (RUF ¶ 15.)[4]  The warrant was supported by a

fifty-page affidavit setting forth the ABC undercover operation

and evidence obtained against plaintiff with respect to attempted

purchases of stolen cigarettes and attempted sale of marijuana.

(RUF ¶ 16.)  On February 3, 2005, per agreement, plaintiff met

undercover ABC operatives at Chinca's Market.  He paid the

operatives approximately $11,000.00 for cigarettes he had been

told were stolen.  He also attempted to sell to the operatives a

half pound of marijuana in exchange for approximately $2,200.00.

After the attempted transaction, plaintiff was arrested by ABC

agents.  Coulter was present, but did not physically take

plaintiff into custody. (RUF ¶ 17.)  Pursuant to the warrant,

plaintiff's van was searched by an ABC investigator for evidence

of drug trafficking.  Marijuana was found in the cup holder next

to the driver's seat, as well as in a jar in the center console.

Minutes after plaintiff was arrested, investigators from

California ABC and other local law enforcement offices, assisted

by some FBI agents, executed a state search warrant for Chinca's

Market and plaintiff's residence in Chico. (RUF ¶ 19.)  Pursuant

to the warrant, plaintiff's computers, some cash, and other

evidence were seized by ABC agents and transferred to Coulter's

---

[4]     Plaintiff disputes whether the warrant attached as Ex.
E to Coutler's declaration is the warrant approved on February 1,
2005 by the Butte County judge because the copy attached to the
declaration has the "no" box checked regarding approval.  Coulter
concedes for purposes of this motion that there is a factual
dispute on this issue.  However, that dispute is not material to
the motion.  For purposes of this motion, it is only relevant
that as evidenced by the FBI's and ABC's contemporaneous reports,
the Butte County judge authorized a search warrant of plaintiff's
home and business on February 1, 2005, and that warrant was
executed on February 3, 2005.  Plaintiff does not raise any
evidence to dispute those facts.

custody.  (RUF ¶ 20.)

After forensic electronic analysis, in which Coulter did not participate, the computers were returned to plaintiff. (RUF ¶ 21.)  Coulter did not participate in questioning plaintiff after he was arrested.  (RUF ¶ 22.)  Coulter had no additional involvement in any further investigation of plaintiff by ABC. (RUF ¶ 23.)

**C. Criminal Prosecution**

On February 25, 2005, the Butte County District Attorney's Office filed a criminal complaint in California Superior Court charging plaintiff with two counts of attempting to sell marijuana under California Health & Safety Code § 11360, and five counts of attempted receipt of stolen property under California Penal Code §§ 664, 496(a).  (RUF ¶ 24.)  Plaintiff was first arraigned on March 11, 2005, and entered a not guilty plea on April 4, 2005. (RUF ¶ 25.)  Coulter was not involved in the decision to prosecute.  (RUF ¶ 26.)

On January 17, 2006, plaintiff filed a motion to dismiss the complaint for discriminatory prosecution under <u>Murgia v. Municipal Court</u>, 15 Cal. 3d 286, 306 (1975) (recognizing a defendant's right to bring a pretrial motion to dismiss on the grounds of "'intentional and purposeful' invidious discrimination").  (RUF ¶ 27.)  On July 17, 2007, the court dismissed the prosecution because the FBI had not produced documents that might have been "material" to plaintiff's motion. (RUF ¶ 28.)  The superior court did not grant the motion based on any finding of discriminatory investigation or prosecution. (<u>Id.</u>)

7

## II.  **Procedural History**

Plaintiff filed his original complaint on September 28, 2008.  (Docket #1.)  Therein, plaintiff alleged claims against Coulter, the FBI, the State of California and various agents of ABC.  On April 14, 2009, Coulter and the FBI moved to dismiss the complaint.  (Docket # 19.)  In response, plaintiff filed a first amended complaint, thereby mooting the motion to dismiss. (Docket # 22.)  In the FAC, plaintiff continued to allege claims against Coulter and other individual defendants but dropped the FBI as a defendant.  In response to the FAC, Coulter filed the instant motion.

In the FAC, plaintiff alleges Coulter caused to be installed a surveillance camera to monitor plaintiff's place of business in Chico, examined plaintiff's bank, financial, and telephone records without a warrant; and intercepted plaintiff's telephone and computer communications without a warrant. (FAC, ¶¶ 10-17.) Plaintiff alleges that Coulter and the FBI did this because plaintiff was Palestinian and a Muslim, and that they lacked probable cause to believe he was financially supporting terrorists or that he had committed any crime.  (Id. at ¶¶ 18-19.)

Plaintiff further alleges that in September 2004, Coulter told an employee of the California Anti-terrorism Information Center that plaintiff was suspected of participating in illegal narcotics activities and that this representation was false in that Coulter did not have information that plaintiff participated in illegal narcotics activities. (Id. at ¶¶ 22-24.) The California official relayed this information to defendant

Roman Alvarez ("Alvarez"), an ABC representative.  (Id. at ¶ 25.)
Plaintiff alleges that Alvarez contacted Coulter, and he told
Alvarez that he had a report that an African male was involved in
large quantities of narcotics. (Id. at ¶ 26.)  Thereafter,
Coulter, Alvarez, and defendants Alba Espinoza ("Espinoza") and
Joe Galvan ("Galvan"), other ABC agents, "conspired to and
devised a plan to investigate, single-out for prosecution, and
entrap plaintiff into committing a crime, for the purposes of
assisting SA Coulter in investigating plaintiff because of his
national origin and religion."  (Id. at ¶ 27.)

     Plaintiff alleges that in "furtherance of that conspiracy,"
the named defendants agreed to send Espinoza, "an attractive
female" to plaintiff's business to entrap plaintiff into
furnishing Espinoza with narcotics.  (Id. at ¶¶ 28-29.)
Plaintiff alleges when that failed, defendants agreed to send
Espinoza back to plaintiff's business to entrap plaintiff into
purchasing stolen cigarettes.  (Id. at ¶¶ 30-31.)  On the
third occasion, plaintiff's employees agreed to purchase stolen
cigarettes.  (Id. at ¶¶ 32-33.)

     Plaintiff further alleges that in "contravention" of ABC
policy, Coulter, Alvarez, Espinoza, and Galvan decided not to
arrest plaintiff's employees but to continue to send Espinoza to
plaintiff's business to entrap plaintiff into "furnishing"
narcotics and purchasing stolen cigarettes.  (Id. at ¶ 34.)
Plaintiff finally agreed to buy cigarettes after Espinoza told
plaintiff that instead of being stolen, the cigarettes were
purchased on a credit card and she wanted to sell them for cash.
(Id. at ¶¶ 35-38.)  Plaintiff alleges Espinoza also went to

plaintiff's business on three separate occasions to get him to

sell her narcotics.  (Id. at ¶¶ 39-40.)  After being spurned

three times by plaintiff, Espinoza told plaintiff that she needed

to sell illegal drugs to continue her business.  (Id. at ¶¶

41-43.)  Plaintiff then agreed to furnish plaintiff with

marijuana.  (Id. at ¶ 44.)

Plaintiff alleges he was then arrested, and a search warrant

was served on his residence.  (Id. at ¶¶ 45-46.)  Plaintiff

alleges that FBI agents unlawfully "interrogated" plaintiff,

asking him questions about his immigration history, his Muslim

religion, how often he attended church and how much he

contributed, his relationship with other Middle Eastern

shopkeepers in Butte County, his contributions to local

Muslim churches, his financial contributions to Hamas, "a Muslim

organization," his thoughts about September 11, 2001, and where

he had hidden $85,000.00 in cash in his house.  (Id. at ¶¶

47-56.)  Plaintiff alleges that FBI agents illegally seized his

personal property, including his computer, videotapes, personal

mail, photographs, and cash.  (Id. at ¶ 57.)  Plaintiff alleges

defendants' conduct violated plaintiff's constitutional rights

under the Fourth, Fifth and Fourteenth Amendments.

To date, no discovery has taken place.  The instant motion

is Coulter's first responsive pleading to the FAC.

**STANDARD**

**I.   <u>Summary Judgment</u>**

The Federal Rules of Civil Procedure provide for summary

judgment where "the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no

10

genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see California v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998). The evidence must be viewed in the light most favorable to the nonmoving party. See Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the moving party fails to meet this burden, "the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102-03 (9th Cir. 2000). However, if the nonmoving party has the burden of proof at trial, the moving party only needs to show "that there is an absence of evidence to support the nonmoving party's case." Celotex Corp., 477 U.S. at 325.

Once the moving party has met its burden of proof, the nonmoving party must produce evidence on which a reasonable trier of fact could find in its favor viewing the record as a whole in light of the evidentiary burden the law places on that party. See Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmoving party cannot simply rest on its allegations without any significant probative evidence tending to support the complaint. See Nissan Fire & Marine, 210 F.3d at 1107. Instead, through admissible evidence the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

11

## II.  **Rule 56(f)**

Rule 56(f) provides in pertinent part:

> Should it appear from the affidavits of a party opposing
> the motion that the party cannot for reasons stated
> present by affidavit facts essential to justify the
> party's opposition, the court may refuse the application
> for judgment or may order a continuance to permit affidavits
> to be obtained or depositions to be taken or discovery to
> be had or may make such other order as is just.

Fed. R. Civ. P. 56(f).  The party seeking a continuance has a three-fold burden under Rule 56(f):  First, he "must make clear what information is sought and how it would preclude summary judgment."  Garrett v. City and County of San Francisco, 818 F.2d 1515, 1518 (9th Cir. 1987).  Second, he must explain "why [he] cannot immediately provide 'specific facts' demonstrating a genuine issue of material fact."  Mackey v. Pioneer Nat. Bank, 867 F.2d 520, 524 (9th Cir. 1989).  Third, he must put the foregoing explanations into an affidavit.  Fed. R. Civ. P. 56(f); Brae Transp., Inc. v. Coopers & Lybrand, 790 F.2d 1439, 1443 (9th Cir. 1986).

Under Rule 56(f), the party seeking a continuance bears the burden of showing what specific facts it expects to uncover that will raise an issue of material fact.  Continental Maritime v. Pacific Coast Metal Trades Dist. Council, 817 F.2d 1391, 1395 (9th Cir. 1987).  The affidavit in support of the request must make clear what information would preclude summary judgment.  Garrett, 818 F.2d at 1518.  Mere speculation or hope that further information may be developed is inadequate to postpone the court's ruling on a motion for summary judgment.  Neely v. St. Paul Fire & Marine Ins. Co., 584 F.2d 341, 344 (9th Cir. 1978).

Where there is no likelihood that further discovery will produce material new information, the court need not grant the continuance and may proceed to a ruling on the motion for summary judgment. <u>California Union Ins. Co. v. American Diversified Sav. Bank</u>, 914 F.2d 1271, 1278 (9th Cir. 1990).

**ANALYSIS**

**I.    <u>Rule 56(f) Request</u>**

In the first instance, plaintiff requests a continuance of the motion to permit time for him to depose Coulter, the other named defendants and the FBI and Homeland Security Officer who interrogated plaintiff following his arrest.  Plaintiff asserts that if given an opportunity to depose Coulter he could establish Coulter's illegal motivation for investigating plaintiff. Plaintiff asserts that whether Coulter's investigation was an anti-terrorism investigation based only on plaintiff's Muslim religion and Middle-Eastern ancestry is the essential issue in this case, and if permitted to depose Coulter he could garner evidence supporting his claim of a discriminatory investigation. Plaintiff asserts that if permitted to depose the other named defendants and other persons involved in plaintiff's arrest, plaintiff could gather facts concerning the illegal bases for Coulter's investigation.  (<u>See</u> Katz Decl., filed July 10, 2009 [Docket # 25-4].)

Plaintiff's assertions are insufficient to establish entitlement to relief under Rule 56(f).  Plaintiff's counsel's affidavit filed in support of the Rule 56(f) request (<u>see</u> <u>id.</u>) does not set forth what *specific* facts plaintiff expects to obtain that will defeat Coulter's motion for summary judgment.

As set forth below, as his preliminary argument in support of his motion for summary judgment, Coulter argues plaintiff's claims are barred by the statute of limitations.  Plaintiff has not explained how the requested discovery will establish the timeliness of this action.  To be entitled to relief under Rule 56(f), plaintiff's supporting affidavit must make clear what information would defeat summary judgment.  <u>Garrett</u>, 818 F.2d at 1518.  Instead, here, plaintiff simply identifies the various topics of which he would like to inquire of Coulter and others, without tying those inquires to the issues presented by Coulter's motion.  This does not meet the requirements of the Rule; nowhere does plaintiff identify what specific facts he anticipates gathering to defeat the instant motion.

At best, plaintiff appears to want to test the credibility of Coulter's declaration filed in support of the motion.  Yet, merely testing Coulter's sworn statements through a deposition in hope that he might change his declaration is not a basis for granting a Rule 56(f) request.  <u>See</u> <u>e.g.</u> <u>Strang v. U.S. Arms Control and Disarmament Agency</u>, 864 F.2d 859, 861 (D.C. Cir. 1989) (holding that "[w]ithout some reason to question the veracity of [the defendant's] affiants . . . ., whom [the plaintiff] sought to depose . . . ., [the plaintiff's] desire to 'test and elaborate' the affiants' testimony falls short" of demonstrating entitlement to relief under Rule 56(f)).  Mere speculation or hope that further information may be developed is inadequate to postpone the court's ruling on Coulter's motion for summary judgment.  <u>Neely</u>, 584 F.2d at 344.

1   Ultimately, plaintiff proposes to conduct broad discovery of

2   Coulter and other agents without any idea of what specific facts

3   will be obtained or how those facts will defeat summary judgment.

4   This is precisely what Rule 56(f) does not permit.  <u>Duffy v.</u>

5   <u>Wolle</u>, 123 F.3d 1026, 1041 (8th Cir. 1997) (holding "'Rule 56(f)

6   does not condone a fishing expedition' where a plaintiff merely

7   hopes to uncover some possible evidence of a constitutional

8   violation") (citations omitted).  Because plaintiff offers no

9   specific reasons demonstrating the necessity and utility of

10  discovery to enable him to withstand summary judgment, the court

11  properly denies plaintiff's Rule 56(f) request.[5]

12  **II.  <u>Coulter's Motion for Summary Judgment</u>**

13  Plaintiff brings his constitutional claims pursuant to

14  <u>Bivens</u> and 42 U.S.C. § 1983.[6]  Such claims are governed by the

15  statute of limitations for personal injury actions for the state

16  in which the misconduct allegedly occurred.  <u>Van Strum v. Lawn</u>,

17  940 F.2d 406, 410 (9th Cir. 1991).  In California, the applicable

18  statute of limitations is two years.  Cal. Civ. Proc. Code §

19  355.1.

20

21

22

23  [5]   Additionally, the court notes that although it does not
    reach the issue of qualified immunity since the action is

24  dismissed on statute of limitations grounds, plaintiff's Rule
    56(f) request also fails because the Supreme Court has repeatedly

25  recognized the propriety of resolving issues of qualified
    immunity *pre*-discovery.  <u>See</u> e.g. <u>Crawford-El v. Britton</u>, 523

26  U.S. 574, 597-98 (1998); <u>Pearson v. Callahan</u>, 129 S. Ct. 808, 815
    (2009).

27  [6]   Since Coulter is a federal officer, plaintiff's
    constitutional claims are authorized by <u>Bivens v. Six Unknown</u>

28  <u>Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388
    (1971).

However, when the claim accrued is governed by federal law. Wallace v. Kato, 549 U.S. 384, 388 (2007); Papa v. United States, 281 F.3d 1004, 1009 (9th Cir. 2002).  A constitutional tort claim arises where plaintiff has "a complete and present cause of action"--i.e., when he can file suit and obtain relief.  See Wallace, 549 U.S. at 388 (internal quotations omitted). Moreover, each discrete act gives rise to a separate constitutional claim for purposes of the statute of limitations. See Carpienteria Valley Farms, Ltd., v. County of Santa Barbara, 344 F.3d 822, 829 (9th Cir. 2003) (no "continuing violation doctrine" applies to § 1983 claims).

Plaintiff alleges wrongdoing by Coulter at least as early as 2004, including warrantless searches and a discriminatory investigation. (FAC, ¶¶ 22.)  The culmination of the investigation was plaintiff's arrest and search of his office and residence on February 3, 2005.  (RUF ¶¶ 17, 19, 20.)  A claim for an unreasonable search and seizure under the Fourth Amendment arises at the time of search or arrest.  See Matthews v. Macanas, 990 F.2d 467, 469 (9th Cir. 1993), *abrogated on other grounds*; Pearce v. Romeo, C02-04011 RMW, 2007 WL 30596, *2 (N.D. Cal. Jan. 3, 2007) ("[I]t is well-settled that the statute of limitations for a section 1983 claim stemming from a warrantless search begins to run on the date of the search, not on the date the plaintiff learns that the search was constitutionally deficient.")  Thus, plaintiff's Fourth Amendment claims based on any pre-arrest searches accrued prior to February 3, 2005, and the claims based on the arrest or post-arrest searches accrued on February 3, 2005.  Thus, for all of plaintiff's Fourth Amendment

16

claims, the two-year statute of limitations ran prior to, or on, February 3, 2007, approximately a year-and-a-half before plaintiff filed the current action on September 29, 2008.

Similarly, plaintiff alleges that Coulter conspired with others to cause plaintiff to be arrested, and that this too was the result of a discriminatory investigation in violation of the Fifth and Fourteenth Amendments' guarantee of equal protection. The arrest occurred on February 3, 2005, and thus, the statute ran on February 3, 2007.  Further, even if the claim is construed as one of false arrest or imprisonment due to a discriminatory motive, such a claim accrues at the time that the legal process was first initiated and a person is bound over or arraigned. Wallace, 549 U.S. at 389-90.  Here, the criminal complaint was filed against Plaintiff on February 25, 2005, and he was first arraigned on March 11, 2005.  (RUF ¶ .)  Thus, the statute of limitations ran at the latest on March 11, 2007, over a year and a half before plaintiff filed his complaint in September 2008.[7]

In response to defendant's motion, plaintiff does not dispute that all of the conduct on which he bases his constitutional claims occurred on or before February 3, 2005. Nor does he claim that the statute was somehow tolled during the pendency of the criminal action against him.[8]  Instead, he argues

---

[7]     The arraignment was apparently continued to April 4, 2005, when Plaintiff entered his guilty plea. (Def.'s RJN, filed July 10, 2009, Ex. A.)  Even using this date as the date of accrual, plaintiff's claim is still time barred as the statute would have run on April 4, 2007.

[8]     Regardless, such an argument would be unavailing.  In Wallace v. Kato, the Supreme Court held that there is no federal tolling of constitutional torts while a plaintiff is subject to a criminal prosecution.  549 U.S. at 394-95.

his claims are not time barred because he only learned in
November 2006 of the alleged "conspiracy" to deprive him of his
rights.

Plaintiff alleges a conspiracy only with respect to his
second claim for relief for violation of the Fourteenth
Amendment's due process protections.  Thus, plaintiff offers no
rebuttal to Coulter's motion that plaintiff's Fourth Amendment
unlawful search and seizure and Fifth and Fourteenth Amendment
equal protection claims are barred by the statute of limitations.
Coulter's motion is thus properly granted on the basis of
plaintiff's failure to oppose the motion on those issues.  With
respect to plaintiff's second claim for relief, for a civil
conspiracy, "it is the wrongful act, not the conspiracy, which is
actionable in a civil case."  Compton v. Ide, 732 F.2d 1429, 1433
(9th Cir. 1984).  Thus, the Ninth Circuit has recognized that
under the "last overt act" rule, injury flows from the alleged
wrongful acts, not the existence of the conspiracy.  Gibson
v.United States, 781 F.2d 1334, 1340 (9th Cir. 1986).  "The
existence of a conspiracy does not generally postpone accrual of
causes of action arising from the conspirators' separate wrongs."
Compton, 732 F.2d at 1433.  Rather, a plaintiff may recover only
for the overt acts that occurred within the statute of
limitations; here, after September 29, 2006.  See Gibson,

Following Wallace, courts in this district have similarly found
Bivens and § 1983 claims time-barred despite the pendency of
state criminal proceedings that related to the underlying alleged
constitutional tort. See e.g., Kamar v. Krolczyk, 07-CV-0340 AWI
TAG, 2008 WL 2880414, * 6-7, 11-12 (E.D. Cal. July 22, 2008)
(claims based on unreasonable search and seizure time-barred);
Olson v. Oreck, 06-CV-2064 MCE-CMK, 2008 WL 149976, *6-7 (E.D.
Cal. Jan. 14, 2008) (same).

781 F.2d at 1340.  All of the overt acts that plaintiff complains

were part of the conspiracy--e.g., installation of the pole

camera, the review of his records and email, his arrest, and the

search of his home, car, and office--occurred prior to or in

February 2005, well outside of the limitations period.

Thus, any conspiracy claim is barred.  Gibson, 781 F.2d at 1340;

Hogan v. Robinson, 01:03-CV-0648 LJO WMW, 2007 WL 2972911, * 4-5

(E.D. Cal. Oct. 10, 2007) (granting judgment on § 1983

claim where all overt acts occurred prior to statute of

limitations).

Contrary to plaintiff's argument, the Ninth Circuit in Kimes

v. Stone, 84 F.3d 1121 (9th Cir. 1996) did not hold differently.

In Kimes, the Ninth Circuit applied the discovery rule to a

conspiracy claim, finding that the claim accrued when the injury

(overt act) is known or reasonably should have been known.  Id.

at 1128.  In contrast, plaintiff here cannot plead ignorance to

the overt acts that give rise to his conspiracy claim.  In

particular, plaintiff stated in his declaration submitted in this

case that he was questioned by an FBI agent on February 3, 2005,

the date of the arrest, about his possible ties to Hamas and his

religion.  (See Yasin Decl. [Docket No. 25-6], at ¶¶ 5-7; Pickles

Decl., filed July 10, 2009, Ex. A (6/12/2007 Reporter's

Transcript), at 14:18-18:2.)  Morever, it is undisputed that

plaintiff was aware of the FBI's involvement in a potential

investigation even earlier than his arrest when he called the FBI

directly in October 2004 about the installation of a pole camera

outside of his convenience store. (RUF, ¶ 9; Pickles Decl., Ex. A

at 18:6-20:4.)  All of this occurred in or prior to February

2005.  Moreover, at the latest, plaintiff's suspicions of an improper investigation culminated in January 2006 when plaintiff brought his motion to dismiss, in state court, for a selective prosecution based on race and religion. (RJN, Ex. A [Docket No. 24-8].)

Accordingly, plaintiff was aware of the overt acts on which he is now basing his conspiracy claim and could have formed a belief that his arrest was improperly motivated by race or religion long before the statute of limitations ran.  Moreover, that plaintiff claims he was not aware of the full extent of Coulter's involvement in an alleged conspiracy until a hearing in November 2006 does not defeat summary judgment.  Coulter submits evidence, which is undisputed by plaintiff, that plaintiff and his attorney met with Coulter in May 2006 when Coulter returned plaintiff's computer and other items. (Pickles Decl., Ex. A at 20:21-22:23.)  Further, an ABC agent testified as to the FBI's involvement in ABC's investigation during a hearing on plaintiff's motion to dismiss in July 2006. (See Pickles Decl., Ex. B (7/11/2006 Reporter's Transcript) at 13:22-18:4.)  Thus, plaintiff was aware or reasonably should have been aware of Coulter and the FBI's involvement in ABC's investigation months before he now claims.  It is Plaintiff's knowledge of the overt acts, not of the conspiracy or the extent of Coulter's involvement, that triggers the statute. See e.g., Pearce v. Romeo, 299 Fed. Appx. 653, 655-56 (9th Cir. 2008) (claims barred where arrest and search known to plaintiff despite claim he did not know full extent of alleged misconduct until later); Amcor Capital Corp. v. United States, 94-CV-21814 DT, 1995 WL 769173,

*3-5 (C.D. Cal. June 12, 1995) (granting judgment where plaintiff aware of misconduct before statue ran despite plaintiff's claims it was unaware of conduct).

Because all of the conduct on which plaintiff bases his claims occurred on or before February 2005, and plaintiff was aware or reasonably should have been aware of this conduct long before the statute ran, his claims against Coulter are time barred and Coulter is entitled to summary judgment.

### CONCLUSION

For the foregoing reasons, plaintiff's motion for a continuance, pursuant to Rule 56(f), to permit time for discovery is DENIED. Defendant Coulter's motion for summary judgment is granted on the ground that plaintiff's claims against him are barred by the statute of limitations.

The case remains pending against the other named defendants, Espinoza, Galvan and Alvarez. Plaintiff shall have 90 days from the date of this Order to effectuate service on said defendants or the court will dismiss the action for a failure to timely serve. Fed. R. Civ. P. 4(m).

IT IS SO ORDERED.

DATED: September 8, 2009

_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE